more at large hereafter, I hold this statute denies the extra wages, when the facts merely are, that a vessel needing repairs from a sea peril has been condemned, and the master has acted in good faith, and his conduct has been such as a prudent owner would have adopted in like circumstances, had he been uninsured." I am aware that in 2 Pars. Shipp. & Adm. 86, that learned judge is credited with a somewhat different statement of his opinion in Hoffman v. Yarrington [supra], one not altogether in harmony with the views here entertained by me, or with the language above given from his reports. This work of Mr. Parsons was published before the reports of Mr. Justice Lowell, and I am bound to adopt as his views the opinion carefully prepared by him and sent forth to the profession by his authority, rather than an abstract of the opinion by a third party, which is not shown to have received the sanction and approval of the learned judge.

I infer from the cautious and guarded manner in which Judge Lowell refers to the question here presented, that he was not convinced that the statute did apply to a case like the present to relieve the owner from his liability. Extra wages being given by the statute in place of damages for breach of contract, it is quite clear that in such cases the seamen are not entitled to the expenses of their return home in addition to the extra wages. Hoffman v. Yarrington, supra.

Claim is also made by the libellants under section 4529 for two days' extra pay for ten days after their discharge, for non-payment of one fourth of the wages then due. The language is, "every master or owner who neglects or refuses to make payment, &c., without sufficient cause, shall pay to the seamen, &c." There are two answers to this claim. The neglect, if any, was on the part of the master and not the owner, as he was not at Nassau, and the present suit is against the owners and not the master. Secondly, there was sufficient cause for non-payment; the net amount of sales, after payment of expenses at Nassau, was distributed by the consul among the officers and crew of the vessel, and the owner should not be required to forward funds to a foreign port to pay the seamen, in anticipation that the sale of the wreck would not prove sufficient for that purpose, and it is not apparent that the master could in any way have raised the necessary amount at that port. The condition of things at the time affords a sufficient excuse for the non-payment of anything beyond the net amount realized from the vessel. The cook is not shown to have been aware before sailing of the unseaworthiness of the vessel, and he is therefore, in my opinion, clearly entitled to the extra wages. The mate's case is of a much more doubtful nature, as he admits that he had sailed in the vessel the previous voyage, and of course must have been aware of the condition of her sails and rigging. It does not appear that he knew the state of the hull, and he had the assurance of the managing owner, that a new mainsail

should be had, which was one of the most important and necessary articles to render her seaworthy. He knew the mainmast-head was defective, but the master was of opinion that it would answer for the voyage, and if she had been furnished with a new mainsail, I am rather of the opinion that the vessel would have been enabled to reach Philadelphia; with some hesitation I shall allow the mate the extra wages, notwithstanding he was aware of some matters in which the vessel was hardly to be deemed seaworthy, as I think she was unseaworthy in other respects of which he is not shown to have been cognizant, and especially as he has a right to depend upon the owner's promise of a new mainsail, the want of which was one of the most important elements of her unseaworthiness. The court cannot but fear that the Wenonah was only one of a large fleet of our American vessels which are kept at sea by reason of the cupidity of their owners, when they should be broken up and destroyed. The British parliament has lately taken measures to drive such rotten hulks from the ocean, and it is to be hoped congress will soon follow this example by such appropriate legislation as may be effectual to accomplish so desirable a purpose.

A claim for $13 for board, at Portland, of the mate after he joined the brig, but before she was ready for sea, is not allowed, as upon all the testimony I do not find that the owners at the time they contracted with the mate, agreed to pay his board. I allow the mate John Nicol, a balance of wages $103.21 and two months' extra wages $50, and that he also recover one month's extra wages $40, which will be retained in the registry for the use of the United States according to the regulations of the statute. To the cook Joseph Stanton, I allow the balance of his wages $95.20 and two months' extra wages $70, and wages for one month $35, for the use of the United States to be retained in the registry. Decree accordingly.

WENTWORTH (FALES v.). See Case No. 4,623.

## Case No. 17,413.
WENTWORTH v. NICKERSON.
[See Case No. 3,054.]

## Case No. 17,414.
WENTWORTH v. UNITED STATES.
[2 Story, 452.] [1]
Circuit Court, D. Massachusetts. Oct., 1843.
COLLECTORS AND NAVAL OFFICERS — SALARIES — OFFICE EXPENSES.

By Act May 7, 1822, c. 107, § 9 [3 Stat. 695], providing for the salaries of collectors and naval officers, the necessary expenses of the office are a primary charge upon the gross receipts or fund, and the officer is entitled to the remainder only, after such deduction: but he is not enti-

[1] [Reported by William W. Story, Esq.]